UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONALD G. JONES,

    Plaintiff,

        v.

LOUISIANA STATE BAR
ASSOCIATION, et al.,

    Defendants.

Civil Action No. 09-0616 (JDB)

## MEMORANDUM OPINION

Plaintiff, proceeding *pro se*, brings this action seeking recovery of $50 billion for the victims of Hurricane Katrina and Hurricane Rita, $22 million in personal damages, and extensive injunctive relief against attorneys at the law firm of Jones & Walker and other persons involved in hurricane relief efforts and actions affecting plaintiff's Louisiana properties. In total, plaintiff has named over 120 defendants, most of whom reside in Louisiana. On April 21, 2009, the Court issued an order observing that venue was likely improper in this district because only seven defendants are alleged to reside in the District of Columbia, with the rest of the 100-plus defendants located primarily in Louisiana, where most of the property is located and the relevant events took place. See Order at 1-2 & n.2 , ECF #5. The Court further determined that threshold defenses under Rule 12(b) of the Federal Rules of Civil Procedure should be considered with respect to the seven District of Columbia defendants, for if they were dismissed, it would likely be appropriate to transfer venue to an appropriate judicial district lying within Louisiana pursuant

to 28 U.S.C. § 1404. Id. Those motions have now been filed and fully briefed.[1]

The D.C. Bar moves to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The Jones Walker defendants in the District of Columbia -- R. Christian Johnsen, Bill Cody, W. Russell King, Nancy Peele, Paul Cambon and Norma Jane Sabiston ("Jones Walker DC Defendants") -- have separately moved to dismiss on those same grounds.[2] Plaintiff has responded to both motions and the matter is ripe for resolution. For the reasons stated below, the Court will grant the motions to dismiss, and then transfer the case to the Eastern District of Louisiana as to the remaining defendants.

## BACKGROUND

The essence of plaintiff's prolix 143-page amended complaint with respect to the defendants in the District of Columbia is that the Jones Walker attorneys misused their legal licenses and violated numerous civil rights laws and the Constitution when they lobbied Congress and other governmental agencies to secure various types of relief for their clients in the wake of Hurricane Katrina and Hurricane Rita in 2005. See Am. Compl. at 79-92. As plaintiff puts it:

> [the Jones Walker Defendants] misused their licenses when they lobbied Congress
> to pass legislation . . . which sent over $200 billion dollars of US HUD, DOC,
> CORPS OF ENGINEERS, FEMA, and such other well intended federal
> assistance, which has not restored plaintiff et al Communities . . . , but which in

---

[1] For ease of reference, the Court will refer to defendants' memoranda in support of their motions to dismiss as "D.C. Bar Mem." and "Jones Walker Mem.," respectively. Plaintiff has filed several memoranda with the Court, which will be referred to by an abbreviated title and ECF document number.

[2] Cody and Sabiston deny plaintiff's contention that they are employed by the Jones Walker law firm, but state they will treat plaintiff's factual allegations as true for purposes of the motion to dismiss. See Jones Walker Mem. at 1 n.2. They also note that they have not been served with process, but have joined in the Jones Walker motion to dismiss in the interest of judicial economy. Id.

2

> fact has created industry . . . in areas which were not the true Congressional intended recipients of these billions of dollars of federal funds and programs. . . .
>
> . . . The [Jones Walker] Defendants misused their licenses when they built an interlocking fabric of experience, relationships, and expertise in getting Congress, and other State legislatures to approve legislation to appropriate funds under the disguise that it is in the "<u>General Welfare of the Public</u>," but in fact it has been designed to end up in the hands of those whom the Federal Law did not prescribe it for.

<u>See</u> Am. Compl. at 83, 87 (emphasis in original). Plaintiff recasts this allegation in numerous ways throughout the Amended Complaint (<u>id.</u> at 79-92), but overall to the same effect -- that the Jones Walker DC Defendants have served only the interests of their private business clients and failed to serve the public welfare, in particular, the "true" victims of the hurricanes, <u>i.e.</u>, "the Low Income, the Handicapped, the less fortunate American people, whom were portrayed in their dire plights at the Superdome, and the Convention Center, in the aftermath of hurricanes Katrina and Rita." <u>See</u> Am. Compl. at 86.

Because the Jones Walker DC Defendants are allegedly attorneys licensed to practice law in the District, plaintiff also has sued the District of Columbia Bar ("D.C. Bar") based on his belief that the D.C. Bar is responsible for licensing and disciplining attorneys and his belief that the D.C. Bar has failed to fulfill its duties with respect to the Jones Walker attorneys. <u>See</u> Am. Compl. at 12, 52. It bears noting at the outset that the D.C. Bar is not the entity that "licenses" attorneys -- that duty falls to the District of Columbia Court of Appeals. D.C. Code § 11-2501. Rather, the D.C. Bar is the "official arm" of the District of Columbia Court of Appeals that manages those attorneys who have been admitted by the Court of Appeals to the practice of law -- a matter of which this Court takes judicial notice. <u>See</u> Rules Governing the District of Columbia Bar, Preamble & Rule 1.

In any event, plaintiff alleges that the D.C. Bar has "fail[ed] to address numerous

3

complaints of fraud, unethical behavior, obvious conflicts of interest, falsifying of court documents, and . . . continu[ed] to renew the licenses of these attorneys, in spite of obvious evidence that they warrant disbarment, and/or suspension . . . ." Am. Compl. at 12. Plaintiff thus seeks a judicial order requiring the D.C. Bar (and all other state licensing boards) to "review[] and investigat[e]" the Jones Walker attorneys "to determine if suspension and/or disbarment is warranted for these heinous violations." Id. at 92.

## STANDARD OF REVIEW

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Leatherman v. Tarrant Cty. Narcotics and Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979). Therefore, the factual allegations must be presumed true, and plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). However, the Court need not accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court -- plaintiff here -- bears the burden of establishing that the court has jurisdiction. See US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000); see also Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."); Pitney

4

Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998). "'[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13-14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case, as long as it still accepts the factual allegations in the complaint as true. See Jerome Stevens Pharmaceuticals, Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir.1992).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court is mindful that all that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); Atherton v. District of Columbia Office of the Mayor, 567

F.3d 672, 681 (D.C. Cir. 2009). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

## DISCUSSION

**I.     Standing**

The D.C. Bar and the Jones Walker DC Defendants both move to dismiss the amended complaint on the ground that plaintiff lacks standing to pursue the claims. It is well-settled that there are three minimum elements necessary to establish standing:

> First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations and footnote omitted); accord Center for Law and Educ. v. Dep't of Educ., 396 F.3d 1152, 1157 (D.C. Cir. 2005). Defendants contend that plaintiff fails to meet any of these elements, although focusing on causation and redressability.[3] See D.C. Bar Mem. at 4-7; Jones Walker Mem. at 14-19.

Defendants contend that plaintiff has not, and cannot, allege an injury "fairly traceable" to

---

[3] Defendants suggest that plaintiff also has failed to establish injury-in-fact, but stress the other two prongs for simplicity. See D.C. Bar Mem. at 5 n.2. The Court also has serious doubts as to whether plaintiff has alleged injury-in-fact, in light of the generalized nature of his injury -- that is, the continued suffering of plaintiff and all others in the Louisiana area from an allegedly inadequate and mismanaged federal and state response to Hurricanes Katrina and Rita. Injuries which are "general rather than particularized are not sufficient to create standing." See Taitz v. Obama, --- F. Supp. 2d ---, 2010 WL 1525030, at *2 (D.D.C. Apr. 14, 2010). Hence, a plaintiff seeking "'relief that no more directly and tangibly benefits him than it does the public at large . . . does not state an Article III case or controversy.'" Id. (quoting Lujan, 504 U.S. at 573-74). However, the defendants have not briefed this aspect of standing, and hence the Court does not rest its holding on the absence of injury-in-fact.

6

their conduct because his injury flows instead from the acts of third parties -- that is, Congress, which enacted the legislation complained of, and other federal and local governmental bodies, which allegedly implemented deficient, or otherwise mismanaged, hurricane relief programs  The Court agrees.  Plaintiff simply fails to allege the manner in which the D.C. Bar or the Jones Walker attorneys aggrieved plaintiff other than his wholly conclusory statement that their actions deprived him of millions of dollars of hurricane relief monies that Congress and others should have allocated more equitably.  See Am. Compl. at 92 (conclusory allegation that he should be awarded $22 million "personally for the damages caused by the Jones' defendants misuse of their licenses" because they prevented plaintiff from benefitting from Congress's hurricane relief legislation); Pl.'s Opp'n to Jones Walker Mot., ECF Doc. No. 35-1, at 21 (alleging that plaintiff has "received not one dime" of Congressional hurricane relief monies).  In other words, plaintiff's injury -- his continued financial suffering after the devastation of the 2005 hurricanes -- is not fairly traceable to the conduct of the D.C. Bar or the Jones Walker DC Defendants.  Therefore, plaintiff lacks standing to sue these defendants.

Plaintiff lacks standing to pursue his claims against the D.C. Bar for a second reason.  The primary relief sought against the D.C. Bar -- an order requiring an investigation of the Jones Walker attorneys -- would not redress any alleged injury plaintiff has suffered.  As the D.C. Bar points out, such an order would only relate to potentially prospective discipline against the Jones Walker attorneys and would not ensure that plaintiff would receive any monetary damages from them.  See D.C. Bar Mem. at 7.  Whether disciplinary action might result in the payment of damages "can, at best, be termed only as speculative."  See Linda R.S. v. Richard D., 410 U.S. 614, 618 (1973) (holding that "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution," and noting the

7

speculative nature of any direct recovery by the citizen). In other words, plaintiff's injury is not redressable by a favorable decision against the D.C. Bar, and hence, plaintiff lacks standing to sue the D.C. Bar for this additional reason.

## II. The Jones Walker DC Defendants

Even if plaintiff had standing to sue the Jones Walker DC attorneys or the D.C. Bar, his complaint should be dismissed for failure to state a claim upon which relief can be granted. The Jones Walker DC Defendants move to dismiss plaintiff's complaint on the ground that the governmental petitioning of which plaintiff complains is immune from liability under the Noerr-Pennington doctrine. See Jones Walker Mem. at 19-21. Under the Noerr-Pennington doctrine, those who "petition[] the Government for redress of grievances, whether by efforts to influence legislative or executive action or by seeking redress in court, [are] immune from liability" for such activity under the First Amendment. Covad Commc'ns Co. v. Bell Atlantic Corp., 398 F.3d 666, 677 (D.C. Cir. 2005) (citing E.R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 136 (1961), and Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972)). An exception to that immunity is recognized where the defendants' activity is a "sham" for "threats, intimidation, and other coercive measures," primarily to "harass or discriminate against the plaintiff[]." See Smithfield Foods, Inc. v. United Food and Commercial Workers Int'l Union, 593 F. Supp. 2d 840, 844 (E.D. Va. 2008).

The Court has reviewed plaintiff's original and amended complaints, and his memoranda in opposition to the Jones Walker motion to dismiss, and it is clear that all of plaintiff's allegations against the Jones Walker DC Defendants solely concern their petitioning activities on behalf of their clients before various governmental bodies. See Am. Compl. *passim*; Pl.'s Opp'n to Jones Walker Mot., ECF Doc. No. 35, at 24-25 (contending that in petitioning Congress,

8

"Jones Walker . . . [acted] in their official capacity of Lobbyist for Laws, [and] . . . solely as an Attorney Law Firm," and "PURELY FOR PROFITS"). Furthermore, none of the allegations even remotely suggest that the Jones Walker DC Defendants used that petitioning activity as a "sham" for the purpose of intimidating or harassing plaintiff or otherwise discriminating against him. Accordingly, the Court holds that the Jones Walker DC Defendants are immune from plaintiff's claims under the Noerr-Pennington doctrine.[4]

### III. The District of Columbia Bar

The D.C. Bar contends that, even if plaintiff had standing to assert a claim against it, the D.C. Bar should be dismissed from this case based on, inter alia, immunity against claims challenging how it conducts the attorney disciplinary process. See D.C. Bar Mem. at 11-13. The Court agrees.

First, D.C. Bar Rule XI, § 19(a) provides for broad immunity to participants in the disciplinary process. It states:

> (a) *Immunity*. Complaints submitted to the Board or Bar Counsel shall be absolutely privileged, and no claim or action predicated thereon may be instituted or maintained. Members of the Board, its employees, members of Hearing Committees, Bar Counsel, and all assistants and employees of Bar Counsel, all persons engaged in counseling, evaluating or monitoring other attorneys pursuant to a Board or Court order or a diversion agreement, and all assistants or employees of persons engaged in such counseling, evaluating or monitoring <u>shall be immune</u> from disciplinary complaint under this rule and <u>from civil suit for any conduct in the course of their official duties.</u>

Id. (emphasis added). The District of Columbia Court of Appeals promulgated this rule under

---

[4] The Jones Walker DC Defendants also move to dismiss plaintiff's claims on the ground that they did not have an attorney-client relationship with him and, hence, owed him no legal duties. See Jones Walker Mem. at 9-14; Jones Walker Supplemental Mem. at 2-4; Jones Walker Reply at 2-14; Pl.'s Opp'n, ECF Doc. No. 35, at 9-14, 20-21. However, plaintiff and defendants both refer to facts outside of the complaint to make their arguments on this issue, and hence the Court does not reach it in resolving the pending motions.

the statutory authority given to it by Congress to adopt rules concerning the "censure, suspension, and expulsion" of bar members. See District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. No. 91-358, §§ 11-2501, 11-2502, 84 Stat. 473, 521 (July 29, 1970); see also Rules Governing the District of Columbia Bar, Preamble. Accordingly, suits against those components of the D.C. Bar engaged in the disciplinary process are appropriately dismissed based on the immunity conferred by this rule. See Thomas v. Knight, 257 F. Supp. 2d 86, 94 (D.D.C. 2003) (where defendants are "acting within the scope of their official duties as the disciplinary arm of the [D.C. Court of Appeals], they are immune" from suit), aff'd, 2003 WL 22239653 (D.C.Cir. Sept. 24, 2003); Nwachukwu v. Rooney, 362 F. Supp. 2d 183, 192 (D.D.C. 2005) (noting that D.C. Bar Rule XI, § 19(a) grants those acting as the disciplinary arm of the court -- there, the Bar Counsel -- "immunity from suit for any conduct in the course of their official duties").

Additionally, the common law also provides absolute immunity to the D.C. Bar with respect to its decisions whether or not to initiate disciplinary proceedings. The D.C. Circuit has held that another disciplinary arm of the District of Columbia Court of Appeals -- the Committee on the Unauthorized Practice of Law -- is entitled to "the full protection of absolute immunity" for its actions involved in the assessment of whether to initiate disciplinary proceedings. See Simons v. Bellinger, 643 F.2d 774, 780 (D.C. Cir. 1980). The court explained that "the Committee was performing, by delegation, the inherent judicial function of determining who is authorized to practice law," and was "serv[ing] as an arm of the court." Id. Those same principles apply to the D.C. Bar, which plaintiff has sued based on its alleged failure to disbar or pursue some other disciplinary action against the Jones Walker attorneys. See Nwachukwu, 362 F. Supp. 2d at 192 (holding that "an allegedly wrongful decision not to initiate formal

proceedings . . . is judicial in nature" and, hence, entitled to absolute immunity under Simons v. Bellinger, 643 F.2d at 780). Plaintiff objects to dismissal, invoking broad references to the general duty of the D.C. Bar "to protect, defend, and honor the United States Constitution," and the primacy of his Constitutional rights over any immunity doctrines. See Pl.'s Opp'n to D.C. Bar's Mot., ECF Doc. No. 40, at 8-15. However, that rhetoric fails altogether to address the legal standards that govern absolute immunity. In short, the D.C. Bar is shielded from plaintiff's claims by the immunity set forth in D.C. Bar Rule XI, § 19(a) and the absolute immunity attendant to its disciplinary functions as recognized in Simons v. Bellinger.

## IV. Venue

Plaintiff has alleged that venue lies in the District of Columbia based on the actions of the Jones Walker DC attorneys and the D.C. Bar. Am. Compl. at 12. The Court observed in its initial order that a transfer of venue to Louisiana would likely be appropriate if the DC defendants were dismissed, in light of the location of well over 100 defendants there and the close nexus between the events alleged and that state. See Order at 2-3 (filed Apr. 21, 2009).[5]

The general venue statute provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Here, virtually all of the remaining named parties are located in Louisiana. These include the Louisiana State Bar Association and its Board of Governors, two judges in the Eastern District of Louisiana, dozens of attorneys in

---

[5] For example, plaintiff alleges that many of the Louisiana defendants misused their professional licenses to pursue illegal seizures, sales, and attachments of his Louisiana properties and to interfere with several lawsuits in state and federal courts located in Louisiana. See, e.g., Am. Compl. at 51-72, 95-97. The complaint further indicates that plaintiff was a resident of Louisiana during much of the time period at issue. Id. at 59-70.

New Orleans or elsewhere in Jefferson Parish, and sheriffs located in Jefferson Parish. See Am. Compl. at 13-40. Many of these parties appear to be the relevant witnesses as well. Since the few defendants located in the District of Columbia have been dismissed, this case has no further connection to this venue. Plainly, then, venue is appropriate in Louisiana, and in particular, in the Eastern District of Louisiana (which covers New Orleans and the Jefferson Parish). Therefore, pursuant to 28 U.S.C. § 1404, the Court concludes that it is in the interests of justice to transfer this action to the Eastern District of Louisiana for the convenience of the parties and witnesses and also considering the close nexus between the events alleged and that district.[6]

## CONCLUSION

For the foregoing reasons, the Court will grant the motions to dismiss filed by the District of Columbia Bar and the Jones Walker DC Defendants. With respect to the remaining defendants, the Court will transfer this action to the Eastern District of Louisiana. A separate order accompanies this memorandum opinion.

/s/
JOHN D. BATES
United States District Judge

Date: September 16, 2010

---

[6] Transfer of venue arguably is required under 28 U.S.C. § 1406(a) as well, which provides for transfer where a case is filed in the wrong district.